UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GLOBAL MUSIC RIGHTS, LLC,**

    **Plaintiff,**

v.                              Case No: 6:22-cv-1792-PGB-RMN

**SOUTHERN STONE COMMUNICATIONS, LLC and BLACK CROW MEDIA GROUP, LLC,**

    **Defendants.**
_____/

## ORDER

This cause comes before the Court on Defendants' Motion to Dismiss (Doc. 28 (the "**Motion**")) and Plaintiff's response in opposition (Doc. 36). Upon consideration, the Motion is due to be denied.

## I.   BACKGROUND[1]

This case flows from radio stations playing copyrighted songs on the airwaves for which they allegedly did not receive prior authorization. (Doc. 1). Plaintiff Global Music Rights, LLC ("**Plaintiff**") is a performance rights organization which represents composers of musical compositions, holds the exclusive licenses to perform those copyrighted works, and enforces those

---

[1] This account of the facts comes from the Plaintiff's Complaint. (Doc. 1). The Court accepts these well-pled factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

copyrights if necessary. (*Id.* ¶¶ 4–5). Plaintiff currently represents a roster of over 100 artists and holds the rights to at least 182 songs relevant to this suit (the "**Compositions**"). (*Id.* ¶¶ 5, 19). Each of the Compositions was registered with the United States Copyright Office and issued a corresponding Certificate of Registration. (*Id.* ¶¶ 20, 43). The owners of these copyrights granted to Plaintiff the exclusive right to license the right to publicly perform these works, collect applicable license fees for performances of those works, and enforce any associated rights where necessary. (*Id.* ¶¶ 15, 21, 44).

Defendant Southern Stone Communications, LLC and Defendant Black Crow Media Group, LLC (the "**Defendants**") are media companies that collectively own and/or operate radio stations, including WVYB-FM, WRTT-FM, WAHR-FM, WHOG-FM, and WKRO-FM. (*Id.* ¶¶ 16–18). Plaintiff offered Defendants multiple opportunities in writing to license the right to publicly perform the Compositions on its airwaves starting in January 2017, but Defendants did not respond to any these offers. (*Id.* ¶¶ 28–40, 46). Since January 2020, Defendants have nevertheless performed the Compositions by playing them on the radio—without authorization—thousands of times.[2] (*Id.* ¶¶ 19, 25, 44).

---

[2] Defendants note that Plaintiff does not appear to limit its allegations to the applicable three-year statute of limitations. (Doc. 28, p. 12). In response, Plaintiff points out that while it included alleged events related to the alleged infringements that fall outside the applicable three-year statute of limitations under 17 U.S.C. § 507(b), the infringements subject to the suit have all allegedly occurred since January 2020. (Doc. 1, ¶ 19; Doc. 36, p. 9 n.7). The Court accepts this self-imposed limitation and interprets the Complaint in light of it.

Consequently, Plaintiff filed this one-count complaint to enforce the rights associated with the Compositions. (Doc. 1). Defendants now move to dismiss the Complaint (Doc. 28), and after Plaintiff's response in opposition (Doc. 36), this matter is ripe for review.

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Defendants argue that the Court should dismiss the Complaint either as a shotgun pleading or for failure to state a claim. (Doc. 28, pp. 4–11). For the following reasons, the Court disagrees.

### A. Shotgun Pleading

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 10 requires "[a] party [to] state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 8(a)(2), 10(b). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

There are four categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants

4

adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Plaintiff's Complaint is not a shotgun pleading. First, while Defendants argue it is full of "conclusory, vague, and immaterial facts," they fail to specify precisely with which allegations they take issue. (Doc. 28, pp. 10–11). Charitably interpreted, perhaps they insinuate that Plaintiff's allegations are too vague as they encompass a broad stretch of time and a large catalog of copyrighted songs. (*See id.*). Such a contention is without merit. *See e.g.*, *Erickson v. Hunter*, 932 F. Supp. 1380, 1384 (M.D. Fla. 1996) (noting allegations of a "continuous mode of behavior" did not necessarily require pleading specific instances of the same). Plaintiff's allegations of a continuous pattern of infringement are specific enough to put Defendants on notice of the many infringements which they allegedly committed. (Doc. 1, ¶¶ 19, 25, 44). Putting Defendants on proper notice did not require enumerating every individual instance of alleged infringement within this continuous pattern of infringement.

Second, Defendants argue that Plaintiff should have separated each allegation regarding each individual copyright infringement by Composition into a separate cause of action or claim for relief. (Doc. 28, p. 10–11). Defendants' interpretation of this requirement is too cramped by far. This is not an instance where Plaintiff has combined its copyright infringement claim with an altogether different claim, say for example, breach of contract. *Bickerstaff Clay Prods. Co. v. Harris Cnty.*, 89 F.3d 1481, 1485 n.4 (11th Cir. 1996) (finding the complaint to be

5

a typical shotgun pleading because "some of the counts present[ed] more than one discrete claim for relief"). Here, providing a list of the copyrighted Compositions and the period of time over which the infringements allegedly occurred gives Defendants sufficient detail to prepare their defenses moving forward in the litigation. *See Arbitron Inc. v. Renda Broad. Corp.*, No. 3:13-cv-716, 2014 WL 1268587, at *8 (M.D. Fla. Mar. 27, 2014) ("requiring [the plaintiff] to plead a separate claim for each allegation relating to each of the fourteen identified copyrights . . . would produce a muddled and unnecessarily redundant complaint.").

Third, Defendants assert that because Plaintiff brings a claim against two Defendants, Plaintiff failed to properly specify which of the Defendants is responsible for each alleged act or omission. (Doc. 28, pp. 10–11). This interpretation again raises the bar beyond what is required. In *Weiland*, the Court assembled various cases to illustrate when lumping multiple defendants together in a pleading raises shotgun pleading concerns. 792 F.3d at 1321–23 n.14. On one hand, instances where a complaint is "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of" are suspect. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). On the other, "[t]he fact that defendants are accused collectively does not render the complaint deficient" because such a "complaint can be fairly read to aver that all defendants are

6

responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Here, Plaintiff's one-count complaint against two defendants can also be fairly read to aver that the two defendants collectively own and/or operate the radio stations which have allegedly infringed Plaintiff's copyrights by playing the Compositions on air thousands of times. (Doc. 1, ¶¶ 18–19). Consequently, the Court turns to Defendants' request to dismiss for failure to state a claim.

### B. Direct Copyright Infringement

At this stage, Plaintiff must plead the following to make out a prima facie case of direct copyright infringement under the Copyright Act: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[3] *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).[4]

---

[3] The Copyright Act protects songwriters' exclusive right to "perform . . . publicly" their copyrighted musical works. 17 U.S.C. § 106(4). Public performances include radio broadcasts. *See id*. § 101 (defining public performance to include "transmit[ting] or otherwise communicat[ing] a performance . . . of the work . . . to the public, by means of any device or process"). Anyone who publicly performs a copyrighted musical work without permission or a license from its owner commits copyright infringement. *Id*. § 501(a).

[4] Defendants argue that Plaintiff must satisfy a more exacting standard when alleging the unauthorized public performance of copyrighted musical compositions, but every case which Defendants cite in support is a district court opinion that applied this standard at the summary judgment stage. *See Broadcast Music, Inc. v. Bisla & Bisla, LLC*, No. 8:11–cv–02273, 2012 WL 5387890, at *1–2 (M.D. Fla. Nov. 2, 2012) (applying five-element standard to probe the record evidence submitted for a summary judgment motion).[4]

In contrast, the Eleventh Circuit, in a more recent opinion, did not find such an exacting standard necessary when deciding the merits of a motion to dismiss. *See Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (requiring only the two ownership and copying elements while reversing a district court's dismissal of a complaint for failure to state a direct copyright infringement claim regarding musical compositions). As such, the Court will not depart from the Eleventh Circuit's approach.

7

First, there are two ways a plaintiff can plausibly allege ownership of a valid copyright: 1) allege actual ownership, or 2) allege status as the exclusive licensee of a valid copyright. 17 U.S.C. § 501(b); *see Dish Network L.L.C. v. Fraifer*, No. 8:16-cv-2549, 2020 WL 1515938, at *9 (M.D. Fla. Jan. 31, 2020) ("Under the [Copyright] Act, copyright owners and exclusive licensees may enforce a copyright."), *report & recommendation adopted*, 2020 WL 1512090 (M.D. Fla. Mar. 30, 2020). To that end, Plaintiff plausibly alleges that it is the exclusive licensee of the musical compositions in question.[5] (Doc. 1, ¶¶ 15, 21, 30–39, 44). Moreover, Plaintiff properly alleges the United States Copyright Office issued Certificates of Copyright Registration for these compositions such that the statutory formalities under the Copyright Act to sue are plausibly satisfied. 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); (Doc. 1, ¶¶ 20, 43). While Plaintiff may need to provide further detail regarding copyright registration for the subject Compositions as well as the assignment and grant of their associated rights moving forward, it has done enough to plausibly establish ownership at this procedural stage.

---

[5] Defendants spill much ink discussing the requirements of a valid copyright assignment. (Doc. 28, pp. 6–9). However, the Court finds that Plaintiff has alleged enough regarding its status as an exclusive licensee to satisfy any concerns Defendants raise in this argument by stating that the original copyright holders of the compositions in question "have granted [Plaintiff] the right to license to others the [Plaintiff] compositions. [Plaintiff] has the right to license their [its] works, collect applicable license fees for performances of those works, remit payments, and enforce the intellectual property rights in court if necessary." (Doc. 1, ¶¶ 15, 19–21).

8

Second, Plaintiff plausibly alleges the Defendants copied the constituent elements of the copyrighted works in question by stating that Defendants' radio stations performed these compositions knowingly without authorization on the air thousands of times since January 2020. *Broad. Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 486 (7th Cir. 1995) ("An act of copyright infringement occurred every time an unregistered jukebox played a copyrighted song in public."); (Doc. 1, ¶¶ 19, 21, 24, 29–32, 40, 45). With both elements of the underlying claim plausibly alleged, Plaintiff's allegations survive the Motion.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Doc. 28) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on April 13, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

9